**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|                              |   |                          |
|------------------------------|---|--------------------------|
| UNITED STATES OF AMERICA,    | ) |                          |
|                              | ) |                          |
| Petitioner-Defendant         | ) |                          |
|                              | ) | No. 06-CR-546            |
| v.                           | ) |                          |
|                              | ) | HONORABLE DAVID H. COAR  |
| RAFAEL PARRILLA,             | ) |                          |
| `                            | ) |                          |
| Respondent.                  | ) |                          |

## MEMORANDUM OPINION AND ORDER

Before this Court is a motion to vacate, set aside, or correct a sentence filed by Petitioner-Defendant Rafael Parrilla ("Defendant") pursuant to 28 U.S.C. § 2255. For the reasons set forth below, this motion is DENIED.

## BACKGROUND

On August 17, 2006, Defendant Parrilla was indicted for: conspiracy to possess with intent to distribute and distribution of over 50 grams of mixtures and substances containing methamphetamine, in violation of 21 U.S.C. § 846 (count one); distributing in excess of 5 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (counts two and four); and distributing 15 grams of mixtures and substances containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (count five). At a hearing held November 20, 2006, Parrilla pled guilty to count one of the indictment before this Court pursuant to a written plea agreement. In that agreement, Defendant waived his right to appeal the ultimate sentencing determination, according to the following language:

1

> 14. The defendant is also aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging this, the defendant knowingly waives the right to appeal any sentence within the maximum provided in the statute of conviction (or the manner in which that sentence was determined), in exchange for the concessions made by the United States in this Plea Agreement.

Plea Agreement ¶ 14.

Prior to sentencing, Defendant's counsel urged the court to sentence Defendant below the advisory guidelines. (Govt. Resp. at 2.) Defendant did not raise any equal protection arguments based on his deportable alien status, which precluded placement in a halfway house or minimum security facility. (*Id.*) On September 11, 2007, Defendant was sentenced to a term of 38 months imprisonment, followed by four years supervised release. (*Id.*) In accordance with the plea agreement, Defendant did not appeal his sentence. (*Id.*)

On January 11, 2008, Defendant filed a pro se motion challenging his incarceration and requesting that his sentence be set aside or corrected pursuant to 28 U.S.C. § 2255. (2255 Mot. at 3.) In that filing, Defendant argues that his status as a deportable alien results in collateral consequences that violate his constitutional rights under the Equal Protection Clause. (*Id.*) Defendant therefore requests that this Court remedy his injury by granting an additional reduction to his original sentence. (*Id.* at 4.)

## LEGAL STANDARDS

As a preliminary matter, this Court notes that the pleadings of pro se parties are to be construed liberally and held to less stringent standards than those prepared by attorneys. *Haines v. Kerner,* 404 U.S. 519, 520-21, 92 S.Ct. 594, 596 (1972); *Donald v. Cook County Sheriff's Dept.,* 95 F.3d 548, 555 (7th Cir. 1996). In addition, a claim

prepared by a pro se party is rendered cognizable on habeas review if the petition draws a sufficient connection between the petitioner's due process rights and any alleged evidentiary errors committed by the district court. *Perruquet v. Briley*, 390 F.3d 505, 512 (7th Cir. 2004).

While Defendant's petition is a memorandum in form, in it he articulates a procedural due process argument; that the district court did not consider his deportable alien status when imposing sentence on him. (2255 Mot at 3.) As a direct result of this error, Defendant claims he received a harsher sentence than would be given to a citizen who pled guilty to the same charge, thus violating the Equal Protection Clause. (*Id.*) As such, Defendant's claim is sufficient for construal as a § 2255 petition, and this court will construe it accordingly.

Waivers of appeal included in a plea agreement are generally enforceable if the record clearly demonstrates that they are made knowingly and voluntarily. *United States v. Williams*, 184 F.3d 666, 668 (7th Cir. 1999); *United States v. Woolley*, 123 F.3d 627, 632 (7th Cir. 1997); *United States v. Hicks*, 129 F.3d 376, 377 (7th Cir. 1997). Similarly, a defendant may also waive the right to collaterally attack his sentence or conviction under § 2255 if the waiver is "express and unambiguous." *Pratt v. United States*, 22 F.Supp.2d 868, 870 (C.D. Ill. 1998); *Woolley*, 123 F.3d at 632. Plea agreements are interpreted by ordinary contract principles, therefore their content and language control the validity of any waiver they might contain. *Id.* (citing *Woolley*, 123 F.3d at 632). Any ambiguous terms are construed against the drafting party. *United States v. Fort*, No. 91 CR 463-6, 1994 WL 702643 *2 (N.D. Ill. Dec. 14, 1994).

Federal courts may grant a motion challenging the validity of a petitioner's confinement if the petitioner establishes that the sentence "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255; *see also Arango-Alvarez v. United States*, 134 F.3d 888, 890 (7th Cir. 1998) (applying § 2255). Upon such a finding, the reviewing court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255. However, habeas corpus relief under § 2255 "is reserved for extraordinary situations." *Sims v. United States*, 71 F. Supp. 2d 874, 876 (N.D. Ill. 1999); *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996).

Before considering the merits of a § 2255 petition, a court must first ensure that the issue was raised in a "procedurally appropriate manner." *Theodorou v. United States*, 887 F.2d 1336, 1339 (7th Cir. 1989). If the sentence is final and the petitioner fails to directly appeal the issue, a habeas corpus petition is rarely the proper channel by which to challenge the application of a Sentencing Guideline provision. *Prewitt*, 83 F.3d at 816 (noting that a § 2255 petition is not a substitute for a direct appeal); *see also United States v. Robinson*, No. 98 C 7026, 1999 WL 259949, at *1 (N.D. Ill. Apr. 6, 1999) (noting that arguments based on Sentencing Guidelines are typically forfeited unless they are raised on appeal).

As a result, a petitioner may only bring a § 2255 petition based on a claim not appealed directly if he can: (1) demonstrate both good cause for failing to raise the issue

4

on direct appeal and actual prejudice from failing to raise the issue, *Massaro v. United States*, 538 U.S. 500, 123 S.Ct. 1690 (2003); *McCleese v. United States,* 75 F.3d 1174, 1177 (7th Cir. 1996); or (2) demonstrate that refusal to consider the issue would result in a "fundamental miscarriage of justice," *id.* at 1178; see Robinson, 1999 WL 259949, at *1. The Supreme Court has equated the miscarriage of justice standard with a claim of actual innocence, *Sawyer v. Whitley,* 505 U.S. 333, 339, 112 S.Ct. 2514, 2519 (1992); *see Kuhlmann v. Wilson,* 477 U.S. 436, 455 n. 17, 106 S.Ct. 2616 (1986) (petitioner must establish fair probability that reasonable doubt of guilt exists in light of all the evidence).

A district court may dismiss a § 2255 motion without an evidentiary hearing so long as the record conclusively demonstrates that the defendant is entitled to no relief. *McCleese*, 75 F.3d at 1182. In order for a hearing to be granted, "the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions." *Galbraith v. U.S.*, 313 F.3d 1001, 1009 (7th Cir. 2002) (quoting *Prewitt*, 83 F.3d at 819).

With respect to the issue of Defendant's status as a deportable alien, the sentencing court is not required to grant a downward departure for every such defendant. *United States v. Gallo-Vasquez,* 284 F.3d 780, 784 (7th Cir. 2002). The Seventh Circuit has expressly held that departures from a correctly established guideline range based solely on a defendant's deportable alien status are improper. *United States v. Mexa-Urtado*, 351 F .3d 301, 305 (7th Cir.2003) ("[D]epartures from the correctly established guideline range based merely on a defendant's status as a deportable alien are not authorized."); *United States v. Meza-Urtado*, 351 F.3d 301, 305 (7th Cir. 2003). A

5

defendant's deportable alien status is relevant "only insofar as it may lead to conditions of confinement, or other incidents of punishment, that are substantially more onerous than the framers of the guidelines contemplated in fixing the punishment range for the defendant's offense." *Id.* (citing *United States v. Guzman,* 236 F.3d 830, 834 (7th Cir. 2001)); *see also United States v. Farouil,* 124 F.3d 838, 845-47 (7th Cir. 1997) (allowing for departure only where deportable alien shows that his or her status amounts to an "unusual or exceptional" factor that has not already been taken into consideration by the Guidelines) (following *Koon v. United States,* 518 U.S. 81, 116 S.Ct. 2035 (1996)).

## ANALYSIS

In support of his § 2255 motion, Defendant argues that his status as a deportable alien prevents him from receiving placement in a minimum security facility or halfway house, thus resulting in collateral punitive consequences that violate his constitutional rights under the Equal Protection Clause. (2255 Mot at 3.)

<u>Waiver of Collateral Appeal</u>

Pursuant to paragraph 14 of the plea agreement, Defendant was aware of his right to directly appeal either the sentence imposed or the manner in which it was determined, and by accepting the offered terms he knowingly waived that right "in exchange for the concessions made by the United States." (Plea Agreement ¶ 14.) However, Defendant did not expressly waive his right to collaterally attack his sentence based on the language in the Agreement. (*See* id. ¶ 14 ("[T]he defendant knowingly waives the right to appeal any sentence within the maximum provided in the statute of conviction.").)

In light of this lack of textual clarity, the Government argues that waiver of the

right to appeal effectively serves as waiver of collateral attack, because a § 2255 petition cannot substitute for any direct appeal that was arguably waived. (Gov't Resp. at 2-3 (citing *Coleman v. United States*, 318 F.3d 754, 760 (7th Cir. 2003) for the proposition that an issue is procedurally defaulted if not raised directly on appeal).) Rather than cite to any transcript or other evidence of Defendant's state of awareness, the Government launches into a legal analysis intended to show how Defendant's waiver of "appeal" should ultimately have the same effect as a waiver of collateral attack. It is clear, however, that the efficacy of the waiver is not determined by analyzing the ultimate legal effect it would have if and when it is enforced as a contractual obligation. This Court must instead consider Defendant's understanding of the plea to ensure that he had full comprehension of its effects and entered into it freely. *Williams*, 184 F.3d at 668-69.

It is somewhat difficult to conclude that Defendant knowingly and voluntarily agreed to waive collateral appeal since there is no evidence in the record that he was fully aware of the agreement's impact. Typically, this right is protected through the Rule 11 colloquy. *See* Fed. R. Crim. P. 11(b)(1)(N) (requiring that the sentencing court "inform the defendant of, and determine that the defendant understands...the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence"). As it is the practice of this Court to comply with the federal rules, it is likely that any lack of clarity in the written plea agreement was resolved in open court. Indeed, courts will typically reference the sentencing colloquy when a defendant has collaterally attacked a plea waiver's validity. *See, e.g., Dickerson v. U.S.*, 2008 WL 474358 at *2-3 (C.D.Ill. Feb. 19, 2008). In this instance, the Government has provided no evidence of what took

place at sentencing before this Court. Nonetheless, though Defendant's understanding of the waiver may still be unclear, his § 2255 motion fails for the reasons stated below.

## Analysis of § 2255 Petition

Before reaching the merits of Defendant's habeas petition, it is necessary to determine if it was raised in a "procedurally appropriate manner." *Theodorou*, 887 F.2d at 1339. Defendant never directly appealed his sentence based on the constitutional claim now before this Court, therefore he is generally barred from raising it for the first time as a collateral attack. *Id.* The narrow exceptions available to petitioners who bring procedurally inadequate claims do not apply to Defendant.

Defendant might be heard on collateral attack if he can show that failure to do so would result in a miscarriage of justice. *Robinson*, 1999 WL 259949, at *1. Defendant does not claim to be innocent or that there was insufficient evidence to convict him. *See Sawyer*, 505 U.S. at 339 (petitioner must establish he has "a colorable claim of factual innocence"). Rather, Defendant simply requests an additional reduction in his original sentence to compensate for any unequal treatment he experiences due to his deportable alien status. (2255 Mot at 4-5.) Fundamental miscarriage in this context would amount to Defendant's having received a sentence that he clearly did not deserve or one that was not intended by the sentencing court. However, Defendant does not argue, and this Court is unable to discern, that there is an alarming discrepancy between the most just result and the sentence that Defendant ultimately received.

Defendant's constitutional claims might be heard on collateral attack despite his failure to raise them on appeal if he can establish *both* good cause for his failure to appeal

– such as ineffective counsel – *and* prejudice arising from that failure to appeal. *Thieret*, 657 F.Supp. at 1152. When construed liberally, Defendant's petition may demonstrate adequate cause for failing to appeal, as he arguably believed that his right to do so was foreclosed by the plea agreement. *See U. S. v. Frady*, 456 U.S. 152, 168, 102 S.Ct. 1584, 1594 (1982) (addressing cause not to object at trial). While not decisive, this argument could satisfy the first prong of the exception to the procedural bar before Defendant.

In any event, Defendant cannot satisfy the second prong, which requires that he demonstrate actual prejudice from the failure to appeal. In this instance, Defendant's claims have no legal merit whatsoever, so he loses nothing by the loss of the opportunity to raise them. Unanticipated sentences generally do not create grounds for negating the terms of a plea agreement. *United States v. Wenger,* 58 F.3d 280, 282 (7th Cir. 1995). More importantly, however, courts have repeatedly addressed the very question at issue in this § 2255 petition; namely, does reduced sentencing flexibility in the incarceration of deportable aliens violate the equal protection clause? *See, e.g., Homesomebath v. United States*, 2008 WL 358766 (E.D. Wis. Feb. 8, 2008) (rejecting equal protection claim on similar facts); *United States v. Vargas*, 1995 WL 453021, n.2 (N.D. Ill. Jul. 27, 1995) (denying motion and noting that challenge to deportable aliens' ineligibility for benefits must be made directly to Bureau of Prison). As a matter of law, the answer to this question is no where there are no other extenuating circumstances. *See U.S. v. Macedo*, 406 F.3d 778 (7th Cir. 2005) (reversing this Court's downward departure that had been based solely on the Bureau of Prisons' practices toward defendant as a deportable alien); *see also Meza-Urtado*, 351 F.3d at 305; *Farouil*, 124 F.3d at 845.

While the courts have left some room for defendants to move beyond this holding, the deportable alien must demonstrate "extraordinary circumstances" that make him or her distinct from the general class. *See Macedo*, 406 F.3d at 794-95. Defendant has not alleged demonstrated any unique circumstances in this instance that warrant an exception to the general rule. The lack of any such allegations – or an affidavit attesting to such circumstances – makes a hearing unnecessary in this case.

Defendant's status as a deportable alien, and the resultant lack of benefits afforded U.S. citizens, are alone insufficient to justify downward departure. Defendant has failed to distinguish his circumstances from those found in *Macedo* and other cases on this issue. Therefore, assuming for the sake of the present motion that Defendant has not waived his right to collateral attack, there is nonetheless no showing of prejudice that might warrant consideration of his constitutional claim.

## CONCLUSION

For the foregoing reasons, Defendant's motion for habeas relief pursuant to 28 U.S.C. § 2255 is DENIED.

                                        Enter:
                                        /s/ David H. Coar
                                        David H. Coar
                                        United States District Judge

Dated: **July 8, 2008**